**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**SALISBURY DIVISION**

| | |
|---|---|
| JOHN TOWNSEND JR. and MICHAEL HOLT on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AHOLD DELHAIZE USA SERVICES, LLC, FOOD LION, LLC AND GIANT FOOD, LLC<br><br>Defendants. | **Case No.: 1:25-cv-704**<br><br>**COMPLAINT – CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs John Townsend Jr. and Michael Holt, individually and on behalf of all others similarly situated ("Plaintiffs"), bring this action against Defendants Ahold Delhaize USA Services, LLC ("Ahold"), Food Lion, LLC, ("Food Lion") and Giant Food, LLC ("Giant Food") (collectively "Defendants") seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclasses, as defined below. Plaintiffs make the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I. INTRODUCTION

1. The release, disclosure, and publication of sensitive, private data can be devasting. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, S.C. Lawyer (May 2014).

a grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2. Salisbury, North Carolina based Defendant Ahold markets itself as "one of the world's largest food retail groups" and "a leader in supermarkets and e-commerce, and a company at the forefront of sustainable retailing."[2] Ahold describes itself as "a family of great local brands that share a passion for delivering great food, value and innovations, and for creating inclusive workplaces that provide rewarding professional opportunities."[3] Ahold provides support services to various Ahold grocery brands, including Food Lion, Giant Food, The Giant Company, Hannaford, Stop & Shop, and more.[4]

3. Salisbury, North Carolina based Defendant Food Lion operates more than 1,000 grocery stores in ten states in the Southeast and mid-Atlantic regions" of the United States.[5] Food Lion claims, "[w]ith our longstanding heritage of low prices and convenient locations, we work to provide the easiest grocery shopping experience for our customers."[6]

4. Landover, Maryland based Defendant Giant Food is a supermarket chain.[7] Defendant Giant Food is a subsidiary of Defendant Ahold.[8]

5. On or about November 6, 2024, Defendant Ahold became aware of a cybersecurity

---

[2] https://www.aholddelhaize.com/about/ (last visited July 22, 2025).
[3] *Id.*
[4] https://www.aholddelhaize.com/brands/ (last visited July 22, 2025).
[5] https://foodlion.com/pages/about-us (last visited July 22, 2025).
[6] *Id.*
[7] https://giantfood.com/pages/our-story (last visited July 22, 2025).
[8] *Id.*

incident involving unauthorized access to some of its internal U.S. business systems (the "Data Breach").[9]

6. Defendant Ahold reported the breach and provided sample disclosure letters to several state attorneys general offices.[10] The disclosure provides that over 2.2 million people were affected.[11] In its sample notification letter, Ahold claims that "the files that may have been affected contained different types of personal information such as name, contact information (for example, postal and email address and telephone number), date of birth, government-issued identification numbers (for example, Social Security, passport and driver's license numbers), financial account information (for example, bank account number), health information (for example, workers' compensation information and medical information contained in employment records), and employment-related information."[12]

7. What is extraordinarily troubling about the Data Breach is that even though Defendants knew how valuable customer information is, Defendants failed to adequately protect Plaintiffs' and Class Members' Personal Identifiable Information ("PII") and Protected Health Information ("PHI") (together "Private Information"). This Private Information was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiffs' and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiffs and Class

---

[9] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/b17963fc-3806-430e-b28e-bac47eb73a8b.html (last visited July 22, 2025).
[10] *Sample Notice,* Ahold Delhaize USA Services, LLC, Office of the Maine Attorney General: https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/b17963fc-3806-430e-b28e-bac47eb73a8b.html (last visited July 27, 2025).
[11] *Id.*
[12] Sample Notice, Ahold Delhaize USA Services, LLC, Office of the Maine Attorney General: https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/b17963fc-3806-430e-b28e-bac47eb73a8b.html (last visited July 22, 2025).

Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

8. Despite learning about the Data Breach on November 6, 2024, Defendants did not notify affected individuals until June 26, 2025, more than seven months later.

9. In 2024, Defendant Ahold generated approximately 89.4 billion euros (more than 105 billion dollars) in net sales.[13] Defendants easily could have allocated a small portion of their burgeoning revenues toward cybersecurity and prevention to forestall and prevent the Data Breach. But Defendant chose profits over protection of customer's most sensitive Private Information.

10. As a result of the Data Breach, through which their Personally Identifiable Information ("PII") and Personal Health Information ("PHI") was compromised, disclosed, and obtained by unauthorized third parties, Plaintiffs and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiffs and the other Class Members will incur ongoing out-of-pocket costs for, *e.g.*, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

11. By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed during the Data Breach.

---

[13] https://www.aholddelhaize.com/media/wcqil04n/ad_annual-report_2024_interactive.pdf (last visited Jul. 25, 2025).

## II. PARTIES

### A. Plaintiff John Townsend, Jr.

12. Plaintiff John Townsend, Jr. is a citizen of and domiciled in the state of North Carolina.

13. Plaintiff Townsend is/was a customer of Defendants.

14. Plaintiff Townsend provided confidential and sensitive Private Information to Defendants, as requested and required by Defendants for the provision of their services. Defendants obtained and continue to maintain Plaintiff Townsend's Private Information and have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

15. Plaintiff Townsend would not have entrusted his Private Information to Defendants had he known that Defendants failed to maintain adequate data security.

16. Plaintiff Townsend received a Notice from Ahold dated June 26, 2025. *See* Exh. 1.

17. Plaintiff Townsend subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches, reviewing his financial accounts for fraud or suspicious activity, contacting his bank, freezing his accounts, and signing up for credit monitoring services at his own expense. He now plans to spend several hours a month checking account statements for irregularities.

18. As a result of the Data Breach, Plaintiff Townsend has suffered emotional distress from the release of his Private Information, which he expected Defendants to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his Private Information. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**B. Plaintiff Michael Holt**

19. Plaintiff Michael Holt is a citizen of and is domiciled in the state of Virginia.

20. Plaintiff Holt is/was a customer of Defendants.

21. Plaintiff Holt provided confidential and sensitive Private Information to Defendants, as requested and required by Defendants for the provision of their services. Defendants obtained and continue to maintain Plaintiff Holt's Private Information and have a legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

22. Plaintiff Holt would not have entrusted his Private Information to Defendants had he known that Defendants failed to maintain adequate data security.

23. Plaintiff Holt received a Notice from Ahold dated June 26, 2025. *See* Exh. 2.

24. Plaintiff Holt subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect himself from data breaches and reviewing his financial accounts for fraud or suspicious activity. He now plans to spend several hours a month checking account statements for irregularities.

25. As a result of the Data Breach, Plaintiff Holt has suffered emotional distress from the release of his Private Information, which he expected Defendants to protect from disclosure, including anxiety, concern, and unease about unauthorized parties viewing and potentially using his Private Information. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**C. Defendants**

26. Defendant Ahold is a Limited Liability Company which is organized under the laws of the State of Delaware. Defendant Ahold is headquartered in Salisbury, North Carolina with its principal place of business located at 2110 Executive Dr, Salisbury, North Carolina, 28147.

27. Defendant Food Lion is a Limited Liability Company which is organized under the laws of the State of North Carolina. Defendant Food Lion is headquartered in Salisbury, North Carolina with its principal place of business located at 2110 Executive Dr, Salisbury, North Carolina, 28147.

28. Defendant Giant Food is a Limited Liability Company which is organized under the laws of the State of Maryland. Defendant Giant Food is headquartered in Landover, Maryland with its principal place of business located at 6300 Sheriff Road, Landover, Maryland, 20785.

## III. <u>JURISDICTION AND VENUE</u>

29. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

30. The Court has personal jurisdiction over Defendants because Defendant Ahold and Defendant Food Lion are registered to do business and maintain their principal place of business in this District.

31. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant Ahold and Defendant Food Lion's principal place of business are located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## IV. <u>FACTUAL ALLEGATIONS</u>

### A. Defendants Failed to Adequately Protect Customer Data, Resulting in the Data Breach.

32. Defendant Ahold claims that "[w]e have taken appropriate technical and

organizational measures to protect your personal data against accidental or unlawful processing. For example, we store your personal data on limited access servers and we protect your personal data through encryption both in transit and in rest."[14]

33. On its Privacy Statement Page, Defendant Food Lion claims to "maintain administrative, technical, and physical safeguards designed to protect personal information about you against accidental, unlawful or unauthorized access, destruction, loss, alteration, disclosure, or use."[15]

34. Notwithstanding these promises, Defendants experienced a data breach that affected more than 2.2 million people.[16]

35. Defendant Ahold claims to have discovered the data breach on November 5, 2024.[17]

36. Defendant Ahold reported the Data breach to the Office of the Maine Attorney General on June 26, 2025, and began notifying affected individuals on the same day.[18]

37. Defendants were familiar with their obligations—created by contract, industry standards, common law, and representations to their customers—to protect customer information. Plaintiffs and Class Members provided their Private Information to Defendants with the reasonable expectation that Defendants would comply with their obligations to keep such information confidential and secure.

38. Defendants failed to comply with these obligations, resulting in the Data Breach.

---

[14] https://www.aholddelhaize.com/privacy-notice/ (last visited July 22, 2025).
[15] https://foodlion.com/privacy-statement/?location=cookies (last visited July 22, 2025).
[16] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/b17963fc-3806-430e-b28e-bac47eb73a8b.html (last visited July 22, 2025).
[17] *Id.*
[18] *Id.*

Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records.

**B. Defendants Failed to Comply with Regulatory Guidance and Industry Standard Cybersecurity Practices.**

39. Defendants' data security failure stems from their failure to comply with state and federal laws and requirements as well as industry standards governing the protection of Private Information.

40. At least 24 states have enacted laws addressing data security practices that require that businesses that own, license or maintain PII to implement and maintain "reasonable security procedures and practices" and to protect PII from unauthorized access.

41. Defendants also failed to comply with Federal Trade Commission ("FTC") guidance on protecting PII and industry-standard cybersecurity practices. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, failing to use reasonable measures to protect PII by companies like Defendant. Several publications by the FTC outline the importance of implementing reasonable security systems to protect data. The FTC has made clear that protecting sensitive customer data should factor into virtually all business decisions.

42. The FTC recommends:

- limiting access to customer information to employees who have a business reason to see it;
- keeping customer information in encrypted files provides better protection in case of theft;
- maintaining up-to-date and appropriate programs and controls to prevent unauthorized access to customer information;
- using appropriate oversight or audit procedures to detect the improper disclosure or theft of customer information;
- monitoring both in- and out-bound transfers of information for indications of a compromise, such as unexpectedly large amounts of data being transmitted from

your system to an unknown user; and,

- monitoring activity logs for signs of unauthorized access to customer information.[19]

43. The FTC has also issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[20]

44. In 2016, the FTC updated its publication, Protecting PII: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.[21] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

45. The FTC recommends that businesses delete payment card information after the time needed to process a transaction; restrict employee access to sensitive customer information; require strong passwords be used by employees with access to sensitive customer information; apply security measures that have proven successful in the particular industry; and verify that third

---

[19] Federal Trade Commission, *Financial Institutions and Customer Information: Complying with the Safeguards Rule*, available at https://www.ftc.gov/tips-advice/business-center/guidance/financial-institutions-customer-information-complying (last visited June 13, 2024).
[20] Federal Trade Commission, *Start With Security* at 2, available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Jan. 6, 2025).
[21] Federal Trade Commission, *Protecting PII: A Guide for Business*, available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf (last visited June 13, 2024).

parties with access to sensitive information use reasonable security measures.

46. The FTC also recommends that companies use an intrusion detection system to immediately expose a data breach; monitor incoming traffic for suspicious activity that indicates a hacker is trying to penetrate the system; monitor for the transmission of large amounts of data from the system; and develop a plan to respond effectively to a data breach in the event one occurs.

47. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

48. The FTC has interpreted Section 5 of the FTC Act to encompass failures to appropriately store and maintain personal data.

49. According to the Federal Bureau of Investigation (FBI), phishing schemes designed to induce individuals to reveal personal information, such as network passwords, were the most common type of cybercrime in 2020, with such incidents nearly doubling in frequency between 2019 and 2020.[22] According to Verizon's 2021 Data Breach Investigations Report, 43% of breaches stemmed from phishing and/or pretexting schemes.[23]

50. Defendants were aware of their obligations to protect customers' PII, PHI and privacy before and during the Data Breach, yet failed to take reasonable steps to protect customers

---

[22] *2020 Internet Crime Report*, FBI, https://www.ic3.gov/Media/PDF/AnnualReport/2020_IC3Report.pdf (last visited Jan. 6, 2025).

[23] *2021 DBIR Master's Guide*, VERIZON, https://www.verizon.com/business/resources/reports/dbir/2021/masters-guide/ (subscription required) (last visited June 13, 2024).

from unauthorized access. In this case, Defendants were at all times fully aware of the obligation to protect the Private Information of Defendant's customers because of their status one of the world's largest food retail groups. Defendants were also aware of the significant repercussions if they failed to do so because Defendants collected Private Information from millions of individuals and knew that this Private Information, if hacked, would result in injury to individuals, including Plaintiffs and Class Members.

51. Based upon the known details of the Data Breach and how it occurred, Defendants also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

### C. The Data Breach Puts Individuals at Increased Risk of Fraud and Identity Theft.

52. An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

53. Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiffs' finances are now at risk due to the Data Breach.

54. Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[24] Consumers lost more than $56 billion to identity theft and fraud in 2020,

---

[24] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited Feb. 1, 2023).

and over 75% of identity theft victims reported emotional distress.[25]

55. Plaintiffs and members of the Class are now in the position of having to take steps to mitigate the damages caused by the Data Breach. Once use of compromised non-financial PII is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[26]

56. Defendants failed to protect and safeguard Plaintiffs' and Class Members' private information, in fact failing to adhere to even their most basic obligations. As a result, Plaintiffs and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

## V. CLASS ACTION ALLEGATIONS

57. Plaintiffs, individually and on behalf of all others similarly situated, bring this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All individuals in the United States whose PII was compromised in the Ahold Data Breach that occurred on or around November 5 and 6, 2024 (the "Class").

58. Excluded from the Class are Defendant, its subsidiaries and affiliates, its officers, directors, and members of its officers' and directors' immediate families, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any

---

[25] *Id.*
[26] Identity Theft: The Aftermath 2013, Identity Theft Resource Center, https://idtheftinfo.org/latest-news/72 (last visited Feb. 1, 2023).

such excluded party, the judicial officer(s) to whom this action is assigned, and the members of those judicial officers' immediate families.

59. Plaintiff's Townsend and Holt can both adequately represent the class as both are former customers of the Defendant and both were notified by the Defendant that their information was compromised in the data breach. As discussed more fully below, the size of the class is numerous and anticipated to exceed 2,000,000 individuals; the factual and legal issues are common across the class and Plaintiffs' experiences are typical of other class members. Plaintiffs reserve the right to modify or amend the definition of the proposed Class prior to moving for class certification.

60. **Numerosity.** The class described above is so numerous that joinder of all individual members in one action would be impracticable. The exact size of the Class and the identities of the individual members are ascertainable through Defendant's records, including, but not limited to, the files implicated in the Data Breach. Upon information and belief, the Class, at minimum, comprises approximately 2,242,521 individuals.[27]

61. **Commonality.** This action involves questions of law and fact that are common to Plaintiff and the Class Members. Such common questions include, but are not limited to:

- Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class Members;
- Whether Defendant was negligent in collecting and storing Plaintiffs' and Class Members' PII;

[27] *Data Breach Notifications*, Office of the Maine Attorney General, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4eb2-8792-a12525b4f318/b17963fc-3806-430e-b283-bac47eb73a8b.html (last visited Aug. 1, 2025).

- Whether Defendant had duties not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;
- Whether Defendant took reasonable steps and measure to safeguard Plaintiffs' and Class Members' PII;
- Whether Defendant failed to adequately safeguard the PII of Plaintiffs and Class Members;
- Whether Defendant breached its duties to exercise reasonable care in handling Plaintiffs' and Class Members' PII;
- Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;
- Whether Plaintiffs and Class Members are entitled to damages as a result of Defendant's wrongful conduct; and
- Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

62. **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members. The claims of Plaintiffs and Class Members are based on the same legal theories and arise from the same failure by Defendant to safeguard their PII. Plaintiffs and Class Members entrusted Defendant with their PII, and it was subsequently accessed by an unauthorized third party.

63. **Adequacy of Representation.** Plaintiffs are an adequate representative of the Class because his interests do not conflict with the interests of the other Class Members Plaintiffs seek to represent; Plaintiffs have retained counsel competent and experienced in class action litigation; Plaintiffs intend to prosecute this action vigorously; and Plaintiffs' counsel has adequate financial

means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class Members will be fairly and adequately protected and represented by Plaintiffs and Plaintiffs' counsel.

64. **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

65. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendant's liability and the fact of damages are common to Plaintiffs and each member of the Class. If Defendant breached its duties and release Plaintiffs' and Class Members' PII, then Plaintiffs and each Class member suffered damages by that conduct.

66. **Ascertainability:** Members of the Class are ascertainable. Class Membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## NEGLIGENCE
## (On Behalf of Plaintiffs and the Class)

67. Plaintiffs restate and reallege the allegations in paragraphs 1-66 as if fully set forth herein.

68. Defendant owed a duty under common law to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

69. Specifically, this duty included, among other things: (a) designing, maintaining, and testing Defendant's security systems to ensure that Plaintiffs' and Class Members' PII in Defendant's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

70. Ahold's duty to use reasonable care arose from several sources, including but not limited to those described below.

71. Defendant had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Ahold was obligated to act with reasonable care to protect against these foreseeable threats. Defendant further knew or should have known that if hackers breached its data systems, they would extract sensitive data and inflict injury upon Plaintiffs and Class Members. Furthermore, Defendant knew or should have known that if

hackers accessed the sensitive data, the responsibility for remediating and mitigating the consequences of the breach would largely fall on individual persons whose data was impacted and stolen. Therefore, the Data Breach, and the harm it caused Plaintiffs and Class Members, was the foreseeable consequence of Defendant's unsecure, unreasonable data security measures.

72. Defendant also owed a common law duty because its conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Ahold's conduct included its failure to adequately restrict access to its computer networks and/or servers that held individuals' PII.

73. Defendant also knew or should have known of the inherent risk in collecting and storing massive amounts of PII, the importance of implementing adequate data security measures to protect that PII, and the frequency of cyberattacks such as the Data Breach.

74. Defendant is subject to an "independent duty," untethered to any contract between Defendant and Plaintiffs and Defendant and Class Members. The sources of Defendant's duty are identified above.

75. Defendant breached the duties owed to Plaintiffs and Class Members and thus was negligent. Although the exact methodologies employed by the unauthorized third parties are unknown to Plaintiffs at this time, on information and belief, Defendant breached its duties through some combination of the following errors and omissions that allowed the Data Breach to occur:

(a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of employee information that resulted in the unauthorized access and compromise of PII; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to

evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies provided to employees; and (h) failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive PII.

76. But for Ahold's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, their PII would not have been accessed, exfiltrated, and compromised by cybercriminals.

77. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered injuries including:

a. Theft of their PII;

b. Costs associated with requesting credit freezes;

c. Costs associated with the detection and prevention of identity theft;

d. Costs associated with purchasing credit monitoring and identity theft protection services;

e. Lowered credit scores resulting from credit inquiries following fraudulent activities;

f. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

g. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

h. Damages to and diminution in value of their PII entrusted to Ahold with the

mutual understanding that Defendant would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others; and

i. Continued risk of exposure to hackers and thieves of their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs and Class members.

78. As a direct and proximate result of Ahold's negligence, including its gross negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiffs and the Class)**

79. Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 66 above as if fully set forth herein.

80. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Defendant or failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

81. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach involving the PII it obtained as part of its employment practices.

82. Plaintiffs and Class Members are within the class of persons that Section 5 of the FTC Act is intended to protect.

83. Moreover, the harm that has occurred is the type of harm that Section 5 of the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and Class Members.

84. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se.*

85. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class Members have suffered injuries, including those identified above in paragraph 77.

86. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have been injured as described herein, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

87. Plaintiffs restate and reallege the allegations set forth in paragraphs 1 through 66 above as if fully set forth herein.

88. As a condition of providing its employment practices, Ahold required Plaintiffs and Class Members to directly or indirectly entrust them with their PII.

89. As a result of these transactions, Plaintiffs and Class Members entered into implied contracts with Ahold by which Ahold agreed to safeguard and protect such PII and keep such PII secure and confidential from unauthorized access.

90. When entering into these implied contracts, Plaintiffs and Class Members

reasonably believed and expected that Ahold's data security practices complied with its statutory and common law duties to adequately protect Plaintiffs' and Class Members' PII.

91. Indeed, implicit in these exchanges was a promise by Ahold to ensure the PII of Plaintiffs and Class Members in its possession would be used as part of its routine employment practices and that Ahold would take adequate measures to protect Plaintiffs' and Class Members' PII.

92. It is clear by these exchanges that the parties intended to enter into implied agreements supported by mutual assent. Plaintiffs and Class Members would not have disclosed their PII to Ahold but for the prospect of Ahold's promise of employment. Conversely, Ahold presumably would not have taken Plaintiffs' and Class Members' PII if not for the intent to employ Plaintiff and Class Members.

93. Plaintiffs and Class Members would not have provided their PII to Ahold had they known that Ahold would not safeguard their PII as promised or provide timely notice of a data breach.

94. Plaintiffs and Class Members fully performed their obligations under their implied contracts with Ahold.

95. Ahold breached its implied contracts with Plaintiffs and Class Members by failing to safeguard Plaintiffs' and Class Members' PII.

96. As a direct and proximate result of Ahold's breach of contract, Plaintiffs and Class Members have suffered injuries, including those identified in paragraph 77 above.

97. As a direct and proximate result of Ahold's breach of implied contract, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**<u>FOURTH CAUSE OF ACTION</u>**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class)**

98. Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

99. Plaintiffs bring this cause of action in alternative to his breach of implied contract above.

100. Plaintiffs and Class Members conferred a monetary benefit on Ahold by providing them with their valuable PII.

101. Ahold knew that Plaintiffs and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the PII entrusted to it. Defendant profited from Plaintiffs' and Class Members' PII and use of Plaintiffs' and Class Members' PII for business purposes.

102. Defendant failed to secure Plaintiffs' and Class Members' PII and, therefore, did not fully compensate Plaintiffs or Class Members for the value that their PII provided.

103. Ahold acquired the PII through inequitable record retention as it failed to disclose the inadequate data security practices previously alleged.

104. If Plaintiffs and Class Members had known Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their PII, they would not have agreed to the entrustment of their PII to Defendant.

105. Under the circumstances, it would be unjust for Ahold to be permitted to retain any of the benefits that Plaintiffs and Class Members conferred upon them.

106. Plaintiffs and Class Members are without an adequate remedy at law.

107. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered injuries, including those identified in paragraph 108 above.

108. Plaintiffs and Class Members are entitled to restitution and/or damages from Ahold and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct, as well as the return of their sensitive PII and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which Plaintiffs and Class Members may seek restitution or compensation.

**FIFTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiffs and the Class)**

109. Plaintiffs reinstate and reallege the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

110. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations described herein.

111. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Ahold is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendant still possess Plaintiff's and Class Members' PII, and that Defendant's data security measures remain inadequate. Furthermore, Plaintiff and Class Members continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

112. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owes a legal duty to secure the PII of Plaintiffs and Class

Members under the common law; and

b. Defendant continues to breach this legal duty by failing to employ reasonable data security measures to safeguard Plaintiffs' and Class Members' PII.

113. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect the PII in its possession.

114. If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Ahold. The risk of another such breach is real, immediate, and substantial. If another breach at Ahold occurs, Plaintiffs and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

115. The hardship to Plaintiffs and Class Members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiffs and Class Members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant have a pre-existing legal obligation to employ such measures.

116. Issuance of the requested injunction will not disserve the public interest. On the contrary, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiffs and Class Members whose confidential information would be further compromised.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a) Certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Plaintiffs' Counsel as Class Counsel for Plaintiffs to represent the Class;

b) Find that Defendants breached their duty to safeguard and protect the Private Information of Plaintiffs and Class Members that was compromised in the Data Breach;

c) Award Plaintiffs and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

d) Award equitable, injunctive and declaratory relief as may be appropriate;

e) Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f) Award pre-judgment and post-judgment interest as prescribed by law; and

g) Grant additional legal or equitable relief as this Court may find just and proper.

## VII. JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 4, 2025

Respectfully submitted,

/s/ Ryan A. Valente
Ryan A. Valente (N.C. Bar No. 40140)
POULIN | WILLEY |
ANASTOPOULO, LLC
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email:teamvalente@poulinwilley.com
cmad@poulinwilley.com

-AND-

**COTCHETT, PITRE & MCCARTHY, LLP**

Thomas E. Loeser, *
Andrew Fuller *
Ellen J Wen *
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone: (206)-802-1272
Facsimile: (206)-299-4184
tloeser@cpmlegal.com
afuller@cpmlegal.com
ewen@cpmlegal.com

*Attorneys for Plaintiff and the Proposed Class*
**Pro hac vice* application forthcoming